UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
THE LAW FIRM OF HUGH H. MO, P.C.,                           Case No.

                            Plaintiff,

                                                            **COMPLAINT**
          -against-

NG LAP SENG a/k/a DAVID NG                                  **DEMAND FOR JURY TRIAL**

                            Defendant.
------------------------------------------------------------------X

       Plaintiff, The Law Firm of Hugh H. Mo, P.C. (the "Mo Firm"), as and for its Complaint

against Defendant Ng Lap Seng a/k/a David Ng ("Ng") alleges as follows:

## INTRODUCTION

       1.      This is an action by the Mo Firm to recover $1.9 million ("$1,900,000.00" or "$1.9

million"), plus interest and costs for legal services rendered to Ng. Ng never complained about the

services or invoices at issue - he simply failed and refused to pay. Thus, this action is necessary.

       2.      Pursuant to two separate written retainer agreements, the Mo Firm represented Ng,

as lead counsel, in a criminal prosecution entitled, *United States v. Ng. Lap Seng, et al.*, Case No.

15-cr-706 (VSB) (S5), United States District Court, S.D.N.Y. (the "Ng Case").  The Mo Firm now

brings this diversity action against Ng for breach of contract, account stated, unjust enrichment,

and *quantum meruit* to recover the sum of $1.9 million, plus interest and costs.  This amount

represents fees due for legal services the Mo Firm rendered on Ng's behalf as lead counsel in the

Ng Case.  Despite repeated demands by the Mo Firm, and Ng's repeated assurance that payment

would be rendered, Ng has refused to pay.

**THE PARTIES**

3.      Plaintiff, the Mo Firm, is a professional corporation organized under the laws of the State of New York and maintains an office at 225 Broadway, 27th Floor, New York, New York 10007.

4.      Defendant Ng is a citizen of Macau, Special Administrative Region of the People's Republic of China and maintains residence in Macau, SAR.

5.      Defendant Ng is currently serving a 48-month prison sentence at Allenwood Low Security Federal Correctional Institution in White Deer, Pennsylvania, with a release date of December 23, 2021, and upon his release to be deported to Macau, SAR pursuant to a Court Order.

**JURISDICTION AND VENUE**

6.      Subject matter jurisdiction over this breach of contract action is premised upon 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $1.9 million, exclusive of interest and costs, and is between citizens of different states.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District. Services were provided in this Judicial District, Defendant's performance was to be made in this Judicial District, and thus Plaintiff sustained damages in this Judicial District.

**FACTUAL BACKGROUND**

8.      Ng was arrested on October 6, 2015 and charged in a criminal complaint with bribery, money laundering, conspiracies to commit bribery and money laundering, and, subsequently, in a fifth superseding indictment, conspiracy to violate the Foreign Corrupt Practices Act.

9.      The Mo Firm and Ng entered into a Retainer Agreement, dated October 8, 2015 (the "Initial Retainer"), concerning the bail phase of the Ng Case.  *See* Exhibit A.

10.     Under the Initial Retainer, Ng engaged the Mo Firm to provide all legal services relating to the Ng Case bail proceedings, including court appearances, detention hearings, appeal, discovery, and motion practice to secure a bail package for Ng's release from detention.  *Id*.

11.     The Initial Retainer provided for a fixed legal fee in the total amount of $1 million ($1,000,000.00), payable in two installments: (a) $500,000.00 payable at the outset of Ng's engagement of the Mo Firm; and (b) $500,000,00.00 payable upon Ng's release from detention pursuant to an appropriate bail package or an appeal of any denial of bail.  *Id.*

12.     On October 26, 2015, the Court set a $50 million ($50,000,000.00) bail bond, secured by a $20 million ($20,000,000.00) cash and real property, along with Ng and three additional co-signers on the bond.

13.     On or about October 26, 2015, the Mo Firm deposited a bank check for the $20 million ($20,000,000.00) cash bail bond to the Clerk of the Court in the United States District Court, Southern District of New York, drawn on the Mo Firm attorney escrow account at Citibank, N.A., from funds previously wire transferred by Ng ("Cash Bail Funds"). *See* Exhibit B.

14.     Ng paid $1 million ($1,000,000.00) to the Mo Firm with two separate wire transfers of $500,000.00 each on October 12, 2015 and October 29, 2015, respectively, in full payment of the Initial Retainer.

15.     After Ng's release on bail, the Mo Firm and Ng entered into a Supplemental Retainer Agreement (the "Supplemental Agreement"), concerning Ng's representation in the pre-trial and trial phases of the Ng Case.  This Supplemental Agreement was executed between the Mo Firm and Ng on November 1, 2015.  *See* Exhibit C. The Supplemental Agreement provided

for a fixed legal fee in the amount of $2 million ($2,000,000.00) in connection with all legal services related to the pre-trial phase of the Ng Case, which included, but was not limited to handling all pre-trial proceedings, such as meeting with witnesses, experts and co-counsel, conducting and overseeing investigations, discovery, court appearances, hearings, and related services. *Id.*

16.      Ng paid $2 million ($2,000,000.00) to the Mo Firm with two separate wire transfers of $1 million ($1,000,000.00) each on November 10, 2015 and December 7, 2015in full payment for the pretrial phase of the Ng Case under the Supplemental Agreement.

17.      The Supplemental Agreement also provided for an additional fixed legal fee in the amount of $3 million ($3,000,000.00) in connection with the trial phase of the Ng Case, which was to be paid in three installments:

- $1 million ($1,000,000.00) to be paid within thirty (30) days from the scheduled date of trial;

- $1 million ($1,000,000.00) to be paid within thirty (30) days from the commencement of trial; and

- $1 million ($1,000,000.00) to be paid upon the conclusion of the trial. *Id*.

18.      On November 16, 2015, Ng drafted six additional terms and conditions in Chinese titled, "Ng Lap Seng Terms and Conditions for Attorneys' Retainer Agreements" ("Additional Terms and Conditions"), that were incorporated and made a part of the Supplemental Agreement. These six Additional Terms and Conditions were directed to the Mo Firm and then co-counsel, Brafman & Associates P.C, included explicit terms involving counsel's commitment and obligation to be thoroughly familiar with certain aspects of Ng's defense, as follows: (1) Ng's personal history and background; (2) history of South-South News Inc. (a U.N. news agency

founded and funded by Ng); (3) background of the proposed U.N. permanent expo and conference center project in Macau; (4) history and development of the United Nation Office of South-South Cooperation, U.N. Group of 77, plus China and 133 South-South member states; (5) relationship between and among the four named co-defendants with Ng; and (6) the government's case against Ng and all viable defenses. *See* Exhibit D.

19.     Ng never complained that the Mo Firm failed to comply with the Additional Terms and Conditions.

20.     During the thirty-three (33) months of the Mo Firm's representation of Ng, the Mo Firm conducted numerous meetings with Ng, his associates, witnesses, expert witnesses, co-counsel, investigators, document reviewers, trial preparation specialists, and others as part of its pre-trial and trial investigation and preparation. The Mo Firm reviewed hundreds of thousands of pages of emails, phone records, WeChat messages, investigation and expert reports, and documents in English and Chinese, and supervised a team of document reviewers in the review and analysis of over 2.5 million discovery documents turned over by the government.

21.     The Mo Firm assembled, coordinated, and directed a legal team consisting of seven law firms, including white-collar defense firms, Caribbean Islands firms, international law and United Nations experts, private investigation firms, trial exhibit/graphic firms, Chinese and Spanish document translators, document reviewers, and trial preparation-related services. The Mo Firm's principal, Hugh H. Mo ("Mo"), also interacted with United Nations and Chinese government officials and personally visited China on two separate occasions to conduct investigations in support of the Ng Case.

22.     Throughout the Mo Firm's representation, Ng designated his daughter Feilan Ng a/k/a Janet Ng ("Feilan") as his agent and representative in the management of all his legal

expenses incurred in the defense of the Ng Case and with securing advances from Ng's company

in Macau, SAR for his legal fees, trial preparation expenses, and private security costs to be wire

transferred to the Mo Firm attorney escrow account at Citibank, N.A.

23.     All legal and vendor service agreements and disbursements by the Mo Firm were

approved or signed by Ng and Feilan, and with copies of all invoices and payment checks provided

to Feilan.

24.     The Mo Firm provided Feilan with contemporaneous copies of all invoices and

payment checks on a regular basis, along with spreadsheets of the running balance of the attorney

escrow account receipts and disbursements throughout the engagement.

25.     At no time did Ng or Feilan ever complain or communicate any objections to the

legal and vendor services agreements and disbursements of payments from the Mo Firm's attorney

escrow account for invoices of services rendered in the defense of the Ng Case.

26.     On or about January 2017, Ng, independently and without the Mo Firm's

involvement, retained Viet D. Dinh ("Dinh"), then a partner at Kirkland & Ellis LLP ("K&E"),

initially to serve as his "shadow counsel" to the Mo Firm's defense and trial team, including to

provide independent legal advice and counsel to Ng and to engage in plea negotiations with the

government in the early part of 2017.  Later, Dinh and K&E associates served as observers during

the Ng Case jury trial and subsequently as counsel for the post-verdict proceedings and appeals

with the Mo Firm's defense team's assistance. K&E legal fees and costs were paid directly by Ng

and not through the Mo Firm attorney escrow account.

27.     Ng's jury trial commenced on June 30, 2017.

28.     On July 27, 2017, the jury convicted Ng on all six (6) counts under the fifth

superseding indictment.

29.     As to the Mo Firm legal fees in connection with the trial phase of the Ng case, Ng

paid the Mo Firm the first installment in the amount of $1 million that was due thirty (30) days

from the scheduled date of trial as required under the Supplemental Agreement in three separate

installment payments: (1) $600,000.00 on December 13, 2016, (2) $300,000.00 on July 14, 2017,

and (3) $100,000.00 on July 25, 2017. *See* Exhibit E and Exhibit F.

30.     After his conviction on July 27, 2017, Ng paid the Mo Firm $100,000.00 on July

31, 2017 towards the second installment in the amount of $1 million that was due 30-days from

the commencement of the trial under the Supplemental Agreement. *See* Exhibit F, wire transfer

$100,000.00 (7/31/2017).

31.     On July 31, 2017, the Mo Firm sent Ng a letter, along with an invoice, dated July

31, 2017, for $1.9 million for the remaining balance of the second and third installments of the

trial fee pursuant to the Supplemental Agreement (the "Outstanding Invoices"). *See* Exhibit G-1

G-2.

32.     All legal fees incurred and paid by Ng pursuant to the Initial Retainer and Supplemental Agreement, and with the remaining balance of $1.9 million due and owing are reflected as follows:

| | Amount Due | Date Paid | Amount Paid | Balance Due |
|---|---|---|---|---|
| **Initial Retainer Agreement (10/8/2015) (Bail Phase)** | **$1,000,000.00** | | | **$1,000,000.00** |
| | | 10/12/2015 | $500,000.00 | **$500,000.00** |
| | | 10/29/2015 | $500,000.00 | |
| **Balance Due:** | | | | **-0-** |

| | Amount Due | Date Paid | Amount Paid | Balance Due |
|---|---|---|---|---|
| **Supplemental Retainer Agreement (11/1/2015) (Pre-trial Phase)** | **$2,000,000.00** | | | **$2,000,000.00** |
| | | 11/10/2015 | $1,000,000.00 | **$1,000,000.00** |
| | | 12/7/2015 | $1,000,000.00 | |
| **Balance Due:** | | | | **-0-** |

| | Amount Due | Date Paid | Amount Paid | Balance Due |
|---|---|---|---|---|
| **Supplemental Retainer Agreement (11/1/2015) (Trial Phase)** | **$3,000,000.00** | | | **$3,000,000.00** |
| 1st Installment (30-days before date of trial) | $1,000,000.000 | 12/13/2016 | $600,000.00 | **$400,000.00** |
| | | 7/14/2017 | $300,000.00 | **$100,000.00** |
| | | 7/25/2017 | $100,000.00 | |
| **Balance Due:** | | | | **-0-** |

| | | | | |
|---|---|---|---|---|
| 2nd Installment (30-days from commencement of trial) | $1,000,000.00 | 7/31/2017 | $100,000.00 | $900,000.00 |
| **Balance Due:** | | | | **$900,000.00** |

| | | | | |
|---|---|---|---|---|
| 3rd Installment (Due at trial) | $1,000,000.00 | | -0- | |
| **Balance Due:** | | | | **$1,000.000.00** |
| **Total Balance Due:** | | | | **$1,900,000.00** |

33.     In July and August 2017, during various meetings with Mo, Ng acknowledged his obligation to pay the Outstanding Invoices to the Mo Firm in connection with the trial phase of the Ng Case, but claimed that due to his cash flow problems he could only pay the Outstanding Invoices from his $20 million Cash Bail Funds after it was released by the Court.

34.     On August 14, 2017, pursuant to Ng's request, Mo provided copies of all engagement letters, agreements, and schedules of payments to date from the Mo Firm's attorney escrow account to Ng and with a copy to Feilan. *See* Exhibit H. By email dated September 12, 2017, the Mo Firm demanded that Feilan arrange for the payment of the Outstanding Invoices. *See* Exhibit I. On November 1, 2017, Mo met with Ng regarding his pending sentencing proceedings and other matters, including the Outstanding Invoices, and Ng confirmed that he will honor the Outstanding Invoices and promised that the entire amount of $1.9 million would be paid from his Cash Bail Funds. *See* Exhibit J.

35.     During this November 1, 2017 meeting, Ng also advised Mo that he had assigned his Cash Bail Funds to K&E and granted K&E a continuing lien and security interest in the Cash Bail Funds to pay K&E and another law firm's fees and costs. *Id.*

36.     Pursuant to Mo's request, K&E provided Mo with a copy of the Supplemental Letter for Retention to Provide Legal Services, dated August 15, 2017, ("K&E Bail Assignment"). *See* Exhibit K.

37.     Pursuant to Mo's request, on November 18, 2017, Dinh confirmed by email, Ng's instructions that the Outstanding Invoices would be paid from the Cash Bail Funds upon its release to K&E.  *See* Exhibit L.

38.     On May 11, 2018, Ng was sentenced to 48-months imprisonment, with additional penalties of $1,000,000.00 fine, $1,500,000.00 forfeiture, $302,977.20 restitution, and a special assessment of $600.00.

39.     On November 22, 2017 and May 15, 2018, pursuant to Dinh's request, Mo sent him copies of the Outstanding Invoices for $1.9 million. *See* Exhibit M.

40.     On July 3, 2018, George N. Bauer ("Bauer"), a K&E partner, wrote to Mo requesting that he co-sign an authorization for the release of the Cash Bail Funds to K&E since the Mo Firm was listed on the court receipt as having paid the Cash Bail Funds on Ng's behalf. *See* Exhibit N.

41.     On July 5, 2018, Mo agreed to authorize the release of the Cash Bail Funds on condition that he be provided with written confirmation from K&E that within 5 days of receipt of the Cash Bail Funds K&E would wire transfer the amount of $1.9 million to the Mo Firm in full payment of the Outstanding Invoices. *See* Exhibit O.

42.     On July 7, 2018, Bauer sent a Letter Authorization signed by Ng for the release of the Cash Bail Funds, which required Mo's counter signature, along with a Payment Agent Agreement ("PAA"), dated July 5, 2018, between Ng and K&E.  *See* Exhibits P and Exhibit Q.

43.     On July 7, 2018, Mo noted to Bauer that under the PAA, the Cash Bail Funds could only be used by K&E to pay its legal fees and costs but all other payments from the Cash Bail Funds would require Ng's written authorization.   This contradicted Ng's prior consent, authorization and instructions to K&E that the Outstanding Invoices would be paid from the Cash Bail Funds upon receipt by K&E.  *See* Exhibit R.

44.     On July 7, 2018, pursuant to Dinh's request, Mo provided copy of the Initial Retainer and the Supplemental Agreement, along with the Outstanding Invoices and prior emails

and letters in 2017 and 2018, in which Dinh confirmed Ng's instructions that the Outstanding Invoices would be paid from the Cash Bail Funds, if and when, it is released to K&E. Mo requested that Dinh to revise or supplement the PAA to explicitly provide that the Outstanding Invoices would be paid from the Cash Bail Funds. *See* Exhibit S. On July 9, 2018, Mo emailed Dinh and reiterated his request that the PAA be revised to provide payment of the Outstanding Invoices pursuant to Ng's prior authorizations. In the email, Mo mentioned that Dinh had an obligation to advise Ng at the time he and K&E entered into the PAA that the Mo Firm's invoices would be paid. Mo also advised Dinh that he was troubled that the K&E Bail Assignment was entered into without notice to the Mo Firm, after Ng had advised K&E that the Outstanding Invoices would be paid from the Cash Bail Funds. Mo also stated that he was reluctant to advise the Court of his objections to the release of the Cash Bail Funds to K&E. *See* Exhibit T.

45.     On July 19, 2018, Feilan emailed Mo requesting an accounting of all disbursements from the Mo Firm attorney escrow account, which included the $20 million Cash Bail Funds. Feilan also mentioned that once she reviewed the accounting documents, Ng would quickly process payment of the Outstanding Invoices. *See* Exhibit U.

46.     On July 20, 2018, pursuant to Feilan's request, Mo emailed and hand delivered to Feilan a summary of all wire transfers and credits and disbursements from the Mo Firm's attorney escrow account to pay the expenses in connection with Ng's defense so Ng could pay the Outstanding Invoices. *See* Exhibit V.

47.     By email dated August 1, 2018, Feilan advised Mo that Ng requested receipts supporting the disbursements and the purposes for the payments from the Mo firm.  Feilan also stated that Ng agreed to instruct K&E to wire $1.9 million to the Mo Firm as soon as the Cash Bail

Funds were released. Feilan further advised Bauer in the email: "George, your firm is authorized to wire $1.9 million to Mr. Mo's office as soon as the bond money is released." *See* Exhibit W.

48.     In an email dated August 2, 2018, K&E, through Bauer, advised Mo that Ng and Feilan had authorized to pay the Mo Firm's Outstanding Invoices in the amount of $1.9 million from the Cash Bail Funds once Mo signed the Letter Authorization to release the Cash Bail Funds to K&E. *See* Exhibit X.

49.     On August 2, 2018, Mo signed the Letter of Authorization for the release of the Cash Bail Funds to K&E in full reliance on K&E's representation that Ng and Feilan had authorized K&E to wire the $1.9 million to the Mo Firm immediately after K&E received the Cash Bail Funds. *See* Exhibits Y and Exhibit Z.

50.     On September 11, 2018, pursuant to a Court Order issued by Judge Vernon S. Broderick of U.S. District Court, SDNY the Court released the Cash Bail Funds, minus $2,803,577.20 (fines, forfeiture, restitution, and court surcharge), in the amount of $17,196,422.80 to K&E pursuant to a Court Order. *See* Exhibit AA.

51.     On September 25, 2018, Bauer called Mo confirming that K&E received the Cash Bail Funds but Ng advised that he countermanded his prior authorizations and instructions to K&E to wire transfer $1.9 million to the Mo Firm as payment of the Outstanding Invoices.

52.     The Mo Firm had only agreed to execute the Letter of Authorization for K&E to receive the Cash Bail Funds in full reliance on Ng's agreement and instructions to K&E to pay the $1.9 million to the Mo Firm, as confirmed by Bauer. *See* Exhibit X.

53.     However, once the Cash Bail Funds were released to K&E, Ng demanded an accounting ruse of the Mo Firm's attorney escrow account deliberately in order to delay and avoid payment of the amount due and owing.

54.     Furthermore, Dinh and K&E obtained the K&E Bail Assignment and the PAA from

Ng, with knowledge of the Mo Firm's Outstanding Invoices were to be paid from the Cash Bail

Funds once it was released to K&E, and K&E knowingly failed to give notice to the Mo Firm in

order to obtain priority of payment of K&E's legal fees and costs from the Cash Bail Funds to the

detriment of the Mo Firm.

55.     On September 25, 2018, Mo received an email from Feilan, along with a hand

written letter in Chinese purportedly signed by Ng on September 2, 2018, and with English

translation by Feilan, as follows:

> "Regarding the issue of Attorney Mo's legal fee, the payment must be made
> according to the terms of the contract. It shall be made only after an audit is
> performed. I do not want to, and I will not owe anyone any money. But I want all
> fees charged to be reasonable and paid only in accordance with the terms we agreed
> to at the time. Payment shall be made only upon my approval. Thank you for your
> understanding and cooperation. NG LAP SENG September 2, 2018."

See Exhibit BB.

56.     Ng's request for an audit of the Mo Firm's attorney escrow account as a condition

precedent to the payment of the Outstanding Invoices was contrary to the terms of the Initial

Retainer and the Supplemental Agreement. The Mo Firm had previously complied with Ng and

Feilan's requests for copies of engagement letters, agreements, schedule of payments, wire transfer

receipts, credits and disbursements from its attorney escrow account on August 14, 2017 and July

20, 2018, paragraphs 34 and 46, *supra*.

57.     On September 25, 2018, Feilan advised Mo that Ng had retained J.T. Shulman &

Company, P.C. ("J.T. Shulman") to perform a formal audit of all fees and disbursements in

connection with the Ng Case, and that the Mo Firm should provide all information requested by

J.T. Shulman.  See Exhibit CC. Over a six (6) month period, from November 2018 to April 2019,

the Mo Firm fully cooperated with an audit by J.T. Shulman in documenting all funds received

and disbursed from the Mo Firm's attorney escrow account on the Ng Case. The Mo Firm provided all documents, including but not limited to the Mo Firm's CPA report, engagement letters, schedule of receipts, disbursements, monthly escrow balances, copy of checks disbursed, copy of attorney retainer agreements and vendor agreements, copy of paid invoices in separate categories, and schedule of itemized disbursements, along with additional documents and information requested by the auditor.

58.     While the audit was substantially completed in April 2019, J.T. Shulman advised Mo that it could not produce a final report until instructed to do so by Ng.

59.     The Mo Firm fully cooperated with Ng's demand for a formal audit of its attorney escrow account by J.T. Shulman; however, Ng and his agent Feilan refused to instruct J.T. Shulman to close its audit despite demands by the Mo Firm.

60.     Ng's request for an audit of the Mo Firm's attorney escrow account receipts and disbursements in connection with the Ng Case was a ruse to avoid his contractual obligations under the Supplemental Agreement to pay the $1.9 million outstanding balance due and owing.

61.     Indeed, Ng's demand for an audit of the Mo Firm's attorney escrow account and his refusal to close the audit with a final report demonstrates that there was no basis for Ng to refuse to pay the Outstanding Invoices.

62.     Despite due demand, Ng has failed and refused to pay the $1.9 million Outstanding Invoices due and owing pursuant to the Supplemental Agreement.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

63.     The Mo Firm repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 62 of the Complaint.

64.     At all relevant times, the Mo Firm had a valid, existing, and enforceable contractual relationship with Ng pursuant to the Supplemental Agreement attached hereto as Exhibit C.

65.     The Mo Firm fully performed its obligations under the Supplemental Agreement.

66.     The Mo Firm has demanded that Ng make the payment due and owing.

67.     Despite due demand, Ng refused to make the payment due and owing.

68.     Ng has materially breached the Supplemental Agreement by failing to make the payment due and owing to the Mo Firm for fees incurred totaling $1.9 million.

69.     Accordingly, Ng is liable to the Mo Firm in an amount to be determined at trial and not less than $1.9 million, plus interest from July 31, 2017, attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Account Stated)

70.     The Mo Firm repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 69 of the Complaint.

71.     The Mo Firm, at Ng's request, rendered services to Ng pursuant to the Supplemental Agreement.

72.     At all relevant times, the Mo Firm submitted the Outstanding Invoices that described the services that had been rendered and set forth the amount due for those services pursuant to the Supplemental Agreement.

73.     Ng received and retained those invoices without objection as to the amount thereof or otherwise.

74.     Ng made partial payments against the Supplemental Agreement.

75.     Ng and Feilan acknowledged the amount in the Supplemental Agreement was due and owing to the Mo Firm without objection.

76.     As a result of Ng's receipt and retention of the Mo Firm's invoices without objection, there exists an account stated between the Mo Firm and Ng in the amount of $1.9 million.

77.     By reason of the foregoing, Ng waived any objection to his indebtedness to the Mo Firm representing the unpaid amounts in the Supplemental Agreement, plus interest accrued and continuing to accrue thereon, attorneys' fees, and costs.

78.     Accordingly, Ng is liable to the Mo Firm in an amount to be determined at trial and not less than $1.9 million, plus interest from July 31, 2017, attorneys' fees and costs.

### THIRD CAUSE OF ACTION
#### (Unjust Enrichment)

79.     The Mo Firm repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 78 of the Complaint.

80.     The Mo Firm provided services to Ng at the instance and request and for the benefit of Ng.

81.     Ng benefitted by the Mo Firm's provision of the services.

82.     Ng is in arrears on his payment of $1.9 million worth of legal services provided by the Mo Firm.

83.     It would be unjust and inequitable to allow Ng to retain the benefit of the Mo Firm's services without paying the Mo Firm.

84.     As a result of the above-described actions by Ng, the Mo Firm has suffered damages in an amount to be determined at trial and not less than $1.9 million, plus interest from July 31, 2017, attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Quantum Meruit)

85.     The Mo Firm repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 84 of the Complaint.

86.     The Mo Firm provided services at the instance and request and for the benefit of Ng.

87.     Ng failed to pay for services provided by the Mo Firm as enumerated above.

88.     The Mo Firm has demanded that Ng make the payment due and owing.

89.     Despite due demand, Ng refused to make the payment due and owing.

90.     Accordingly, Ng is liable to the Mo Firm in an amount to be determined at trial and not less than $1.9 million, plus interest from July 31, 2017, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Law Firm of Hugh H. Mo, P.C. respectfully requests that this Court enter judgment in favor of the Mo Firm and against Defendant Ng Lap Seng a/k/a David Ng in an amount to be determined at trial and not less than $1.9 million, plus interest from July 31, 2017, attorneys fees and costs, and grant such other, further and different relief as the Court deems just and proper.

## JURY TRIAL DEMAND

The Mo Firm hereby demands a trial by jury.

Dated: New York, New York
        August 31, 2020

THE LAW FIRM OF HUGH H. MO, P.C.

By:    Hugh H. Mo
        Pedro Medina
        Elizabeth L. Mo

225 Broadway, 27th Floor
New York, New York 10007
Tel: (212) 385-1500
Fax: (212) 385-1870
Email: hhmo@hhmolaw.com

Counsel for Plaintiff

18