UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE LAW FIRM OF HUGH H. MO, P.C.,

                              Plaintiff,

        v.

NG LAP SENG ALSO KNOWN AS DAVID NG,

                              Defendant.

-------------------------------------------------------------------X
NG LAP SENG ALSO KNOWN AS DAVID NG,

                          Third-Party Plaintiff,

        v.

HUGH H. MO,

                          Third-Party Defendant.
-------------------------------------------------------------------X
NG LAP SENG ALSO KNOWN AS DAVID NG,

                          Counterclaim Plaintiff,

v.

THE LAW FIRM OF HUGH H. MO, P.C.,

                          Counterclaim Defendant.

-------------------------------------------------------------------X

Case No.: 1:20-cv-07077-AKH

**FIRST AMENDED ANSWER
AND COUNTERCLAIMS**

**THIRD- PARTY CLAIM**

      Ng Lap Seng a/k/a David Ng ("Ng" or "Defendant"), by and through his undersigned

attorneys Cohen Tauber Spievack & Wagner P.C., as and for his First Amended Answer to the

Complaint of the Law Firm of Hugh H. Mo, P.C. (the "Mo Firm" or "Plaintiff"), avers as

follows:

**INTRODUCTION**

     1.      Denies the truth of the allegations set forth in paragraph 1 of the Complaint.

2.       Denies the allegations set forth in paragraph 2 of the Complaint and refers to the referenced written agreements for their terms.

### THE PARTIES

3.       Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the Complaint.

4.       Admits.

5.       Admits and refers to the referenced Court Order for its terms.

### JURISDICTION AND VENUE

6.       Paragraph 6 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

7.       Paragraph 7 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

### FACTUAL BACKGROUND

8.        Admits that Ng was arrested on October 6, 2015 and refers to the documents referenced in paragraph 8 of the Complaint for their contents.

9.       Ng denies the allegations set forth in paragraph 9 of the Complaint and refers to the Initial Retainer for its terms.

10.      Ng denies the allegations set forth in paragraph 10 of the Complaint and refers to the Initial Retainer for its terms.

11.      Ng denies the allegations set forth in paragraph 11 of the Complaint and refers to the Initial Retainer for its terms.

12.      Ng neither admits nor denies the allegations set forth in paragraph 12 of the Complaint, and refers to the Court documents for their terms.

2

13.     Admits.

14.     Admits that Ng paid the Mo Firm $1,000,000.00.

15.     Admits that Ng signed a Supplemental Agreement and refers to that document for its terms.

16.     Admits that Ng paid the Mo Firm $2,000,000.00.

17.     Ng denies that the fixed legal fee was solely for the purpose of the trial phase and refers to the Supplemental Agreement for its terms.

18.     Admits that Ng provided a list of items for his attorneys to familiarize themselves with and refers to the document referenced therein for its contents.

19.     Denied.

20.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 20 of the Complaint.

21.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 21 of the Complaint.

22.     Denied.

23.     Denied.

24.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 24 of the Complaint.

25.     Denied.

26.     Admits that Ng hired Dinh, a partner at K&E and paid K&E legal fees, and except as so admitted, denies the allegations set forth in paragraph 26 of the Complaint.

27.     Admits.

28.     Admits.

29.     Admits that Ng made payments to the Mo Firm in the amount of $1 million, $600,000.00, $300,000.00, and $100,000.00 but except as so admitted, denies the allegations set forth in paragraph 29 of the Complaint.

30.     Admits that Ng made a payment to the Mo Firm in the amount of $100,000 but except as so admitted, denies the allegations set forth in paragraph 30 of the Complaint.

31.     Denies the allegations set forth in paragraph 31 of the Complaint and refers to the document for its contents.

32.     Admits that Ng paid the Mo Firm millions of dollars, but except as so admitted, denies the allegations set forth in paragraph 32 of the Complaint.

33.     Denies the allegations set forth in paragraph 33 of the Complaint, but admits that Ng acknowledged that the Mo Firm claimed he owned it money.

34.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 34 of the Complaint and refers to the documents referenced therein for their contents.

35.      Admits.

36.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 36 of the Complaint.

37.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 37 of the Complaint.

38.     Admits.

39.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 39 of the Complaint.

40.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 40 of the Complaint and refers to the document referenced therein for its contents.

41.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 41 of the Complaint and refers to the document referenced therein for its contents.

42.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 42 of the Complaint and refers to the documents referenced therein for their contents.

43.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 43 of the Complaint and refers to the documents referenced therein for their contents.

44.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 44 of the Complaint and refers to the documents referenced therein for their contents.

45.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 45 of the Complaint and refers to the documents referenced therein for their contents.

46.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 46 of the Complaint and refers to the documents referenced therein for their contents.

47.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 47 of the Complaint and refers to the documents referenced therein for their contents.

48.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 48 of the Complaint and refers to the documents referenced therein for their contents.

49.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 49 of the Complaint and refers to the documents referenced therein for their contents.

50.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 50 of the Complaint and refers to the documents referenced therein for their contents.

51.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 51 of the Complaint.

52.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 52 of the Complaint.

53.     Denied.

54.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 54 of the Complaint.

55.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 55 of the Complaint and refers to the document referenced therein for its terms.

56.     Denied.

57.     Admits that Ng retained J.T. Shulman to perform an audit but except as so admitted, denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 57 of the Complaint.

58.     Denies knowledge or information sufficient to from a belief as to the truth of the allegations set forth in paragraph 58 of the Complaint.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Admits that Ng has not paid the claimed $1.9 million but except as so admitted, denied.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

63.     Ng repeats and realleges the preceding paragraphs as if fully set forth herein.

64.     Ng respectfully refers all matter of law to the Court.

65.     Denied.

66.     Admits that the Mo Firm demanded payment but except as so admitted, denied.

67.     Admits that Ng has not paid the claimed $1.9 million but except as so admitted, denied.

68.     Denied.

69.     Denied.

**SECOND CAUSE OF ACTION**
**(Account Stated)**

70.     Ng repeats and realleges the preceding paragraphs as if fully set forth herein.

71.     Denied.

72.    Denied.

73.    Denied.

74.    Admits that Ng made payments to the Mo Firm and, except as so admitted,

denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

79.    Ng repeats and realleges the preceding paragraphs as if fully set forth herein.

80.    Admits that the Mo Firm provided some services.

81.    Denied.

82.    Denied.

83.    Denied.

84.    Denied.

## FOURTH CAUSE OF ACTION
### (Quantum Meruit)

85.    Ng repeats and realleges the preceding paragraphs as if fully set forth herein.

86.    Admits that the Mo Firm provided some services.

87.    Denied.

88.    Admits that a demand has been made.

89.    Denied.

90.    Denied.

## AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

91.     Plaintiff's claims are barred because they fail to state a claim upon which can be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

92.     Plaintiff's claims are barred in whole or in part because Plaintiff failed to perform its obligations under the various retainer agreements.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

93.     Plaintiff's claims are barred in whole or in part because of the doctrine of "unclean hands."

### COUNTERCLAIMS AND THIRD PARTY COMPLAINT

Ng Lap Seng a/k/a David Ng ("Ng"), by and through his undersigned counsel, Cohen Tauber Spievack & Wagner P.C., as and for his counterclaims against the law firm of Hugh H. Mo, P.C. (the "Mo Firm") and third party complaint against Hugh Mo, alleges as follows:

### Parties

1.      Ng is a citizen of Macau, Special Administrative Region of the People's Republic of China, where he maintains a residence.  Mr. Ng is currently incarcerated at Allenwood Low Security Federal Correctional Institution in Pennsylvania.

2.      The Mo Firm is a professional corporation organized under the laws of the state of New York, with an office at 225 Broadway, 27th Floor, New York, New York 10007.

3.      Third-Party Defendant Hugh Mo ("Mo") is the sole shareholder of the Mo Firm and resides in Queens, New York.

9

**Jurisdiction and Venue**

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(3) in that Ng is a citizen of a foreign state and Mo and the Mo Firm are citizens of New York.  The amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      Venue is proper in this district.

**Facts Common to All Charges**

6.      In or about September 2015 Ng was charged with making false statements to federal agents in connection with various sums of U.S. currency that was brought into the United States.  Ng retained Brafman & Associates, P.C. ("Brafman") to defend him against the charges.

7.      On or about October 6, 2015, additional charges were brought against Ng in the matter of *United States v. Ng Lap Seng, et al.,* Case No. 15-cr-706 (the "Criminal Action").  Ng was arrested and charged with bribery, money laundering and related conspiracy charges arising out of allegations that he bribed two ambassadors to the United Nations in exchange for receiving official support from the United Nations for a project to develop a center in Macau.  A superseding indictment added a charge of violation of the Foreign Corrupt Practices Act.

8.      Upon his arrest, Ng was held in the Manhattan Correctional Facility in New York, New York ("MCC").

9.      On or about October 6, 2015, Mo visited Ng at MCC to offer the services of the Mo Firm to represent Ng against the criminal charges.  Although Ng was already represented by Brafman, Mo, who speaks Chinese, was able to communicate directly with Ng, who does not speak or understand English.

10.      Mo informed Ng that he had the experience and expertise to defend him against the charges and assured Ng that he had handled cases of equal complexity in the past.  Mo

promised Ng that he would be able to secure his release on bail.  Mo further advised Ng that he required a payment of $1 million to secure a bail package for Ng and that they would subsequently negotiate a fixed fee for the remainder of the case.

11.     Mo told Ng that the Mo Firm's representation will include all legal matters and stressed that he would be the lead counsel for his case and would perform all of the legal work in the case.  He also told Ng that any additional attorney whom Ng wishes to retain would only serve in a supporting role.  Mo expressly informed Ng that while Brafman would assist him in the case, the Mo Firm would be the lead counsel.

12.     Ng was unfamiliar with the United States criminal justice system.  Mo succeeded in convincing him that the Mo Firm would secure his release on bail and that he had the requisite expertise and experience to take over his defense in the Criminal Action as lead counsel.

13.     In reliance on Mo's representations that he had the expertise and experience to handle a case of this complexity, and that he would be lead counsel handling all aspects of the case, Ng agreed to retain the Mo Firm to represent him, and agreed to pay the Mo Firm $1 million solely for the Mo Firm's work in securing a bail package for Ng's release from detention.

14.     Ng's belief and understanding that the Mo Firm had the requisite expertise and that Mo would take over as lead counsel with other attorneys supporting him is confirmed by a note Ng wrote on October 6, 2015 in which he expressed his delight in meeting Mo and regret that he had not met him earlier.  Ng wrote that he wanted Mo to "handle the entire case.  The other lawyers will play an assisting role" and that "starting from tomorrow, I decided to use him (Mo) to take the lead of my case, Attorney Ben [Brafman] will support him."

15.     On October 8, 2015, Ng signed a retainer agreement (the "Agreement") with the Mo Firm.  The Agreement provided, *inter alia*, for Ng to pay $1 million to the Mo Firm to handle the bail application phase of the Criminal Action.

16.     Ng does not read or understand English and relied on Mo's translation of the document for him.  A copy of the Agreement and Ng's handwritten note are attached at Exhibit A to the Complaint.

17.     Notwithstanding the Mo Firm's fee of $1 million for its purported work on the bail application, unbeknownst to Ng, the majority of the legal work to secure Ng's release on bail was performed by Brafman—whose depth and breadth of experience in handling criminal matters of this magnitude and complexity greatly exceeded that of the Mo Firm.  Ng paid Brafman separately and directly.

18.     On October 26, 2015, the Court set bail of $50 million secured by $20 million in cash and ordered home confinement for Ng with electronic monitoring.

19.     After Ng was released on bail to home confinement pending trial, Mo regularly visited Ng and spoke to him for hours about the Mo Firm's role as lead counsel for the remainder of the case.  Mo took credit for securing Ng's release on bail and assured Ng that he would win the case.  Between October 26 and November 1, 2015, Ng and Mo discussed the terms of the Mo Firm's representation of Ng for the remainder of the action.

20.     Mo informed Ng that the Mo Firm required $5 million to represent him in the Criminal Action through trial, which amount did not include the $1 million Ng had already paid for the bail application.  During the negotiation of the fees, Ng asked Mo whether he will accept a $5 million flat fee (including the $1 million paid for handling the bail matter) to handle the case from the beginning to the end.  Ng informed Mo that he intended to pay Brafman the same

amount.  Mo told Ng that he required $6 million because he was going to be the lead attorney for the case and Brafman will only serve as co-counsel in a supporting role; thus, he should pay Brafman $4 million.  Mo and the Mo Firm capitalized on the fact that Ng did not speak or understand English, could not communicate directly with other attorneys representing him, and was unfamiliar with the United States criminal justice system.  Mo touted his own experience and reputation as an attorney and held the Mo Firm out to be best situated to represent Ng.

21.    Mo represented to Ng that because the Mo Firm was going to take such a large and demanding role in defending Ng in the Criminal Action, the firm would have to devote all of its time to this case to the exclusion of other matters and would have to hire an additional staff of 20, including attorneys, paralegals, and interpreters, which Ng understood was to be included in the fixed fee.

22.    On November 1, 2015, in reliance on all of Mo's and the Mo Firm's representations including, without limitation, that the Mo Firm had substantial expertise and experience in handling these types of complex criminal cases, and that the Mo Firm would do all of the substantive legal work as lead counsel with other attorneys merely assisting, and that it would hire additional staff as part of the fee, Ng agreed to pay the Mo Firm an additional $2 million for the pre-trial phase and $ 3 million for the trial through sentencing.  Thus, Ng entered into a supplemental agreement with the Mo Firm, which provided for this payment of an *additional* $5 (the "Supplemental Agreement," together with the Agreement, the "Agreements"). The Mo Firm did not provide Ng with a written version of the Supplemental Agreement translated from English to Chinese.  Rather, Mo purported to translate the document for Ng orally.  A copy of the Supplemental Agreement is attached at Exhibit B to the Complaint.

23.     Ng agreed to pay this amount in reliance on Mo's representations and because he fully expected the Mo Firm to be lead counsel performing all substantive legal work in the Criminal Action.  He did not expect Mo to be merely the titular lead counsel coordinating the work performed by other attorneys or duplicating their work and acting as interpreter.

24.     Despite Mo's representations, the Mo Firm did not serve as lead counsel.  The majority, if not all, of the substantive legal work to defend Ng in the Criminal Action was performed by attorneys from other law firms, for which the Mo Firm orchestrated for Ng to pay separately.

25.     In or about April 2016, the Brafman withdrew from the case.  As a result of the Mo Firm's lack of sufficient expertise and experience to represent Ng at trial of the Criminal Matter, the Mo Firm retained other attorneys with more relevant and substantive experience and capability.  In or about April 2016, the Mo Firm hired Park Jensen Bennett LLP ("Park Jensen") to act as of counsel to the Mo Firm in the Criminal Action.  The Mo Firm had Ng paid a separate additional fee for the work performed by Park Jensen, rather than pay the firm out of the $6 million fixed fee.

26.     In June 2016, the Mo Firm retained Shapiro Arato LLP ("Shapiro Arato") to join the team as co-counsel in the Criminal Action.  Once again, the Mo Firm had Ng paid a separate additional fee for the work performed by Shapiro Arato , rather than pay the firm out of the $6 million fixed fee.

27.     The Park Jensen firm took the lead as trial counsel in the Criminal Acton and Shapiro Arato handled the complex legal motions and arguments.

28.     With a team in place to do all necessary substantive work, the Mo Firm played only a minor and non-substantive role in the case.  This is reflected in both the docket and trial

transcript of the Criminal Action.  The handful of court filings by the Mo Firm over the course of two and half years relate primarily to minor alterations to the bail and home conditions and ministerial matters.  Substantive legal filings were prepared by the other law firms.

29.    The Mo Firm served as the liaison between the other attorneys and Ng, and disregarded Ng's repeated requests to meet personally with them.  Given the language barrier and the fact that he was on home confinement, Ng was at the mercy of Mo and the Mo Firm, in which he had placed his trust.

30.    The trial in the Criminal Matter took place over the course of 4 weeks in July 2017.  The Mo Firm's non-substantive and, at best, secondary role was glaringly obvious as Mo was present but barely participated.  Indeed, the Mo Firm barely had any role at the trial at all. The Jensen Park firm delivered the opening and closing statements and conducted the examinations of the witnesses except for two minor witness whom Mo examined.  Indeed, the trial transcript reveals that for the majority of the trial Mo did not have a speaking role.

31.    Ng had only agreed to pay the Mo Firm the amounts set forth in the Agreements because Mo represented that the Mo Firm would perform and serve as lead counsel with the assistance of other attorneys and not the other way around.

32.    The jury returned a guilty verdict on July 27, 2017.

33.    Attorneys from the law firm of Kirkland and Ellis LLP ("K&E"), who had been observing the trial, took over the representation of Ng for a bail hearing and sentencing.  Ng retained and paid K&E separately.

34.    Although the $3 million fixed fee charged by the Mo Firm for the trial portion of the case included the preparation of the sentencing memorandum and representing Mo at sentencing, none of this work was prepared by the Mo Firm.

FIRST CLAIM FOR RELIEF
(Fraudulent Inducement
Against Mo and the Mo Firm)

35.     Ng repeats and realleges the allegations set forth in the proceeding paragraphs as if fully set forth herein.

36.     On or about October 6, 2015, Mo informed Ng that the Mo Firm had the experience and expertise necessary to defend him in the Criminal Action.

37.     Mo told Ng that the Mo Firm's representation would be in capacity as lead counsel and that the Mo Firm would perform all substantive work in the case and any other attorneys retained would only serve in supporting roles.

38.     Mo informed Ng that he would secure bail for him for a fixed fee of $1 million to prepare the bail package and participate in the bail hearing.  Mo expressly informed Ng that Brafman would assist him but that the Mo Firm would serve as lead counsel.

39.     On October 8, 2015, in reliance on Mo's representations, Ng entered into the Agreement with the Mo Firm.

40.     Between October 26 and November 1, 2015, Ng and Mo had numerous discussions regarding the Mo Firm's representation of Ng for the remainder of the Criminal Action.

41.     Mo informed Ng that the Mo Firm required a fixed-fee of an additional $5 million, consisting of $2 million for pre-trial work and $3 million for trial and sentencing.

42.     Mo informed Ng because the Mo Firm was going to take such a large and demanding role as lead counsel defending Ng in the Criminal Action, the firm would have to devote all of its time to his case to the exclusion of other matters.

43.     Mo informed Ng that the additional $5 million included expenses for an additional staff of 20, including attorneys, paralegals, and interpreters.

44.     Ng understood that such expenses were included in the fixed fee.

45.     On November 1, 2015, in reliance on all of Mo's and the Mo Firm's representations Ng entered into the Supplemental Agreement.

46.     Ng agreed to pay this amount in reliance on Mo's representations because he believed he was paying the Mo Firm to act as lead counsel performing all substantive legal work in the Criminal Action and was not merely titular lead counsel coordinating the work performed by other attorneys, duplicating their work, and acting as interpreter.

47.     Ng also relied on Mo's representations that the fixed fee was necessary because the volume of work would demand all his time and preclude the Mo Firm from handling other matters.

48.     Ng relied on Mo's representation that the Mo Firm had the knowledge, experience, and expertise to handle the Criminal Action as lead counsel.

49.     Mo's representations were false.  The Mo Firm did not have the experience and expertise to handle a case of this magnitude and complexity and could not substantively represent Ng's interest as lead counsel.

50.     Mo intentionally misrepresented his experience and ability and role he would play in the case to induce Ng to retain him.

51.     These misrepresentations were material as Ng relied on them and was induced to enter into the Agreements and agree to pay the Mo Firm $6 million.

52.     Despite the Mo Firm's self-serving designation of itself as "lead counsel" – all substantive legal work was performed by other firms.

17

53.     Ng would never have agreed to enter into the Agreements and pay the fixed fee amounts but for Mo's false representations.

54.     As a result, Ng has been damaged in an amount to be determined.

SECOND CLAIM FOR RELIEF
(Breach of Contract
Against the Mo Firm)

55.     Ng repeats and realleges the allegations set forth in the proceeding paragraphs as if fully set forth herein.

56.     On October 8, 2015, Ng entered into the Agreement with the Mo Firm.

57.     On November 1, 2015, Ng entered into the Supplemental Agreement with the Mo Firm.

58.     Pursuant to the Agreements, the Mo Firm was required to perform the bulk of all substantive work necessary to represent Ng in the Criminal Action, from the bail application through trial and sentencing in exchange for a fixed fee of $6 million.

59.     The fixed fee apportioned $1 million for the bail application, $2 million for the pre-trial work and $3 million for trial and sentencing, payable at certain intervals.

60.     Ng complied with his obligations under the Agreements and made payments for legal services in excess of $6 million.

61.     The Mo Firm breached its obligations under the Agreement and did not perform all the work it was required to perform.  Instead, it delegated the bulk of the substantive legal work to outside lawyers for whom Mo arranged to have Ng paid separately.

62.     As a result of the Mo Firm's breach, Ng paid the Mo Firm for work that was not performed by the Mo Firm, while also paying the lawyers who did perform the work.

63.     As a result of the Mo Firm's breach, Ng been damaged in an amount to be determined at trial but in no event less than $4 million.


WHEREFORE, Ng seeks a judgment as follows:

(i)     dismissing Plaintiffs' claims in their entirety;

(ii)    awarding Ng damages on Count I of the Counterclaim and third-party claim for fraudulent inducement in an amount to be determined at trial;

(iii)   awarding Ng damages on Count II of the Counterclaim for breach of contract in an amount to be determined at trial but in no event less than $4 million;

(iv)    awarding Ng interest at the highest rate permitted by law;

(v)     awarding Ng the costs and fees incurred in this action; and

(vi)    all other relief that this Court deems just and proper.

Dated:  January 15, 2021

COHEN TAUBER SPIEVACK & WAGNER P.C.

By: /s/ Stephen Wagner
        Stephen Wagner
        Sari Kolatch
        420 Lexington Avenue, Suite 2400
        New York, New York 10170
        Tel.: (212) 586-5800
        swagner@ctswlaw.com
        skolatch@ctswlaw.com
        *Attorneys for Ng Lap Seng*

.