UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
THE LAW FIRM OF HUGH H. MO, P.C.,

        Plaintiff,

  -against-

NG LAP SENG a/k/a DAVID NG,

        Defendant.
-----------------------------------------------------------------------x
NG LAP SENG a/k/a DAVID NG,

        Third-Party Plaintiff,

  -against-

HUGH H. MO,

        Third-Party Defendant.
-----------------------------------------------------------------------x

Case No.: 1:20-cv-07077 (AKH)

**DEFENDANT NG LAP SENG'S PRETRIAL MEMORANDUM**

Cohen Tauber Spievack & Wagner P.C.
420 Lexington Avenue, Suite 2400
New York, New York 10170
Tel. 212-586-5800

*Attorneys for Ng Lap Seng*

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................................ ii
PRELIMINARY STATEMENT .................................................................................................... 1
STATEMENT OF FACTS ............................................................................................................. 3
LEGAL ARGUMENT .................................................................................................................... 3
I.   THE MO FIRM CANNOT PREVAIL ON ITS BREACH OF CONTRACT CLAIM .......... 3
II.  THE MO FIRM CANNOT RECOVER ON ITS ACCOUNT STATED CLAIM .................. 7
III. THE MO FIRM BREACHED THE RETAINER AGREEMENTS ........................................ 8
IV.  MO AND THE MO FIRM FRAUDULENTLY INDUCED NG TO ENTER INTO THE
     RETAINER AGREEMENTS .................................................................................................. 9
CONCLUSION ............................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*4Kids Ent., Inc. v. Upper Deck Co.*,
 797 F. Supp. 2d 236 (S.D.N.Y. 2011) ...................................................................................... 7

*C.M. v. Syosset Cent. Sch. Dist.*,
 11-CV-1402 MKB, 2013 WL 6157188 (E.D.N.Y. Nov. 22, 2013) ......................................... 5

*Jacobson v. Sassower*,
 113 Misc. 2d 279, *aff'd* 122 Misc.2d 863, *aff'd* 107 A.D.2d 603, *aff'd* 66
 N.Y.2d 991 (1985) .................................................................................................................. 8

*Jeffrey L. Rosenberg & Assocs., LLC v. Candid Litho Printing, Ltd.*,
 76 A.D.3d 510 (2d Dep't 2010) .............................................................................................. 6

*Koral v. Koral*,
 185 A.D.2d 298 (2d Dep't 1992) ............................................................................................ 4

*Mar Oil, S.A. v. Morrissey*,
 982 F.2d 830 (2d Cir. 1993) ................................................................................................... 6

*Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*,
 325 F. Supp. 2d 341 (S.D.N.Y. 2004) .................................................................................... 8

*Merrill Lynch & Co. Inc. v Allegheny Energy, Inc.*,
 500 F.3d 171 (2d Cir. 2007) ................................................................................................... 3

*Optima Media Group Ltd. v Bloomberg L.P.*,
 17-CV-01898 (AJN), 2021 WL 1941878 (SDNY May 14, 2021) ......................................... 3

*C.M. ex rel. P.M. v. Syosset Cent. Sch. Dist.*,
 CV 11-1402 MKB GRB, 2013 WL 5799908 (E.D.N.Y. Oct. 25, 2013) ................................ 5

*Pichardo v. Koenig*,
 112 N.Y.S.3d 424 (App. Term 1st Dep't 2018) .................................................................. 4, 6

*Preferred Health Care Ltd. v. Empire Blue Cross and Blue Shield*,
 94 CIV. 9326 RPP, 1997 WL 160489 (S.D.N.Y. Apr. 7, 1997) ............................................. 8

*Petition of Rosenman Colin Freund Lewis & Cohen*,
 600 F. Supp. 527 (S.D.N.Y. 1984) ......................................................................................... 8

*S.D. v. St. Luke's Cornwall Hosp.*,
 63 Misc. 3d 384 (Sup. Ct. Orange County 2019) ................................................................... 5

*Seippel v. Jenkens & Gilchrist, P.C.*,
 341 F Supp 2d 363, *amended on reconsideration*, 03 CIV. 6942 (SAS), 2004
 WL 2403911 (S.D.N.Y. Oct. 26, 2004). ...................................................................................9

*Smitas v. Rickett*,
 102 A.D.2d 928 (3d Dep't 1984) ............................................................................................8

*Spellman v. Muehlfeld*,
 166 N.Y. 245 (1901) ...............................................................................................................8

*United States v. Ng Lap Seng*,
 15-cr-00706 (VSB) ......................................................................................................... *passim*

*Ween v. Dow*,
 35 A.D.3d 58 (1st Dep't 2006) ...............................................................................................6

**Other Authorities**

22 N.Y.C.R.R. § 1200 ....................................................................................................................5

Defendant Ng Lap Seng ("Ng") respectfully submits this Pretrial Memorandum, pursuant to Paragraph 3(B)(i) of the Court's Individual Rules, in advance of the final pretrial conference scheduled for September 7, 2022, at 2:30 p.m. and the bench trial scheduled to commence on September 12, 2022.

## PRELIMINARY STATEMENT

This action involves claims by the Law Firm of Hugh H. Mo (the "Mo Firm") that Ng owes him $1.9 million in legal fees, in addition to the $4.1 million Ng already paid the Mo Firm for its purported representation of Ng in *United States v. Ng Lap Seng*, 15-cr-00706 (VSB)( the "Criminal Action"). In September 2015, Ng, then a 67-year-old resident and citizen of Macau Special Administrative Region of the People's Republic of China ("Macau"), and a wealthy businessman, was arrested by federal agents in at the airport in the New York area as he was on his way home to Macau. Ng, who did not speak, read or understand English, was detained at a federal detention center for several weeks and eventually visited by Hugh H. Mo ("Mo"), the sole principal of the Mo Firm.

By the time he met Mo, Ng was already being represented by Brafman & Associates, P.C. ("Brafman"). Mo, who is fluent in Chinese, was able to communicate with Ng directly and met with him several times and promised Ng that he would secure his release on bail, represented to him that the Mo Firm possesses the requisite knowledge and experience to handle a case of this complexity, that the Mo Firm would perform all of the services that were set forth in the engagement letters he later prepared, that he was more suited to represent him than Brafman, and that he would secure an acquittal for Ng.

Ng, detained in a foreign country, was completely unfamiliar with the U.S. criminal justice system and was unable to communicate with anyone around him. Mo

capitalized both on Ng's vulnerability and wealth and demanded an exorbitant fee to represent Ng in the Criminal Action. Mo claimed that he required the fee because of all of the work he was going to be doing, that he would be doing more work than Brafman, and would be hiring a team of interpreters and associates to assist him.

Ng relied upon and believed Mo's representations and therefore agreed to retain the Mo Firm to represent him in the Criminal Action. The Mo Firm demanded a fixed fee of a total of $6 million ($1 million for the bail hearing, $2 million for pre-trial work, and $3 million for trial and, if applicable, sentencing).

Rather than perform the agreed upon legal services, the Mo Firm outsourced the legal services it was retained to perform and facilitated the retention of lawyers from multiple other law firms to perform every aspect of Ng's representation in the criminal matter. Ng paid the Mo Firm $4.1 of the 6 million fixed fee and learned not only that the Mo Firm had not in fact performed the services for which the fee was to be paid, but that it did not have the requisite skill and ability to try a case of this complexity and magnitude.

The Mo Firm does not have any contemporaneous or reconstructed time records with respect to work purportedly performed in the Criminal Action. The law firms to which the Mo Firm outsourced the legal work—for which Ng paid separately—all kept contemporaneous time records. Those records, coupled with all of the documentary evidence in the case and transcripts from the Criminal Action, demonstrate that the substantive legal work was performed by firms other than the Mo Firm.

Not only will the Mo Firm be unable to establish that he is owed any fees for the reasonable value of the work he performed, but the evidence will show that the Mo Firm did not perform work for the fees that Ng had paid, that the fees charged were

fundamentally unreasonable, that the Mo Firm breached its obligations under the retainer agreement by failing to perform even the most basic services, and that Mo induced Ng to enter into the retainer agreement by making false representations to Ng.

## STATEMENT OF FACTS

Ng incorporates by reference his Proposed Findings of Fact and Conclusions of Law submitted herewith.

## LEGAL ARGUMENT

I. **THE MO FIRM CANNOT PREVAIL ON ITS BREACH OF CONTRACT CLAIM**

A fundamental prerequisite for recovery pursuant to a breach of contract claim under New York law is that the plaintiff demonstrate that he has performed his obligations under the contract. Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or has committed a material breach. *Merrill Lynch & Co. Inc. v Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007)(reversing the district court grant of summary judgment on plaintiff's breach of contract claim where there was insufficient evidence to show that plaintiff performed its obligations under the contract); *see also Optima Media Group Ltd. v Bloomberg L.P.*, 17-CV-01898 (AJN), 2021 WL 1941878, at *8 (SDNY May 14, 2021)( plaintiff failed to prove its breach of contract claim because it did not substantially perform its obligations under the contract).

The Mo Firm cannot recover on its breach of contract claim unless it can establish that it performed the legal services it was required to perform under the retainer agreements. Where, as here, the reasonable value and actual performance of legal services are challenged, a lawyer cannot recover a fixed fee without proving the services performed and the reasonable value of those services.

3

It is Plaintiff's burden to demonstrate the work he performed and establish the reasonable value of those services. *Pichardo v. Koenig*, 112 N.Y.S.3d 424 (App. Term 1st Dep't 2018) is instructive. In *Pichardo*, plaintiff sought a refund of the $25,000 fixed fee paid to an attorney retained to represent her son in a criminal matter, claiming that the attorney failed to perform the services for which he had been retained. The trial court dismissed the case, holding that even though the defendant attorney could not establish the number of hours he spent on the case the plaintiff nevertheless did not meet her burden of proof that he failed to perform those services. *Id*. The appellate term reversed, holding that

> even when it is the client who commences an action to recover a portion of the attorneys' fees paid, it is the attorney who must shoulder the burden of demonstrating the fair and reasonable value of the services rendered…the trial court was required to determine the reasonable value of the services performed by defendant in the underlying criminal matter and the portion, if any, of the retainer fee to be returned to the plaintiff.

*Id.* (citations omitted); *see also Koral v. Koral*, 185 A.D.2d 298, 299-300 (2d Dep't 1992) (reversing order directing defendant to pay her former attorney $50,000 pursuant to a stipulation between the attorney and client and remanding to determine whether $50,000 was a reasonable fee in light of the services the attorney provided).

The fixed-fee agreement between the Mo Firm and Ng must be considered in the context of the work that the Mo Firm performed and a lawyer's ethical obligation not to charge excessively high fees. Pursuant to Rule 1.5(a) of the New York Rules of Professional Conduct,

> A lawyer shall not make an agreement for, charge, or collect an excessive or illegal fee or expense. A fee is excessive when, after a review of the facts, a reasonable lawyer would be left with a definite and firm conviction that the fee is excessive. The factors to be considered in determining whether a fee is excessive may include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

>   (2) the likelihood, if apparent or made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
>   (3) the fee customarily charged in the locality for similar legal services;
>
>   (4) the amount involved and the results obtained;
>   the time limitations imposed by the client or by circumstances;
>   the nature and length of the professional relationship with the client;
>
>   (5) the experience, reputation and ability of the lawyer or lawyers performing the services; and
>
>   (6) whether the fee is fixed or contingent.

22 N.Y.C.R.R. § 1200; *see also C.M. ex rel. P.M. v. Syosset Cent. Sch. Dist.*, CV 11-1402 MKB GRB, 2013 WL 5799908, at *10 (E.D.N.Y. Oct. 25, 2013), report and recommendation adopted *sub nom. C.M. v. Syosset Cent. Sch. Dist.,* 11-CV-1402 MKB, 2013 WL 6157188 (E.D.N.Y. Nov. 22, 2013) (counsel fees excessively high pursuant to Rule 1.5 because, among other reasons, there was "little substantive work by plaintiffs' counsel").

"[A] lawyer cannot charge a fee that is excessive or unreasonable. To do so violates the Rules of Professional Conduct." 22 NYCRR 1200, Rule 1.5[a]; S.*D. v. St. Luke's Cornwall Hosp.*, 63 Misc. 3d 384, 415 (Sup. Ct. Orange County 2019) (holding that "assessing a multiplier of four times to a fee if counsel prevails on an appeal is excessive. Consequently, the bonus feature of the appellate fees sought by plaintiff is disallowed.").

The Mo Firm did not present any evidence to establish that it performed anywhere near $1 million worth of legal work for the two-week period of Ng's bail hearing.  Mo was the only attorney working on the Criminal Action for the Mo Firm and Ng was simultaneously represented by Brafman, which performed a substantial portion of the work to secure Ng's bail.

There is no factual basis on which this Court can conclude that the Mo Firm performed $1 million worth of legal services during this 2-week period, that this amount was consistent with amounts charged in the industry for similar work, in similar cases by attorneys of similar experience, or that Ng knew and understood that this fee was grossly out of proportion to the work the Mo Firm purported to undertake.

It is specifically for this reason that courts have broad discretion to scrutinize the reasonableness of attorney fee arrangements, given their inherent authority to regulate the practice of law. *See, e.g.*, *Pichardo*, 112 N.Y.S.3d at 424 ("As a matter of public policy, courts pay particular attention to the fee arrangement between attorneys and their clients"). In *Ween v. Dow*, 35 A.D.3d 58, 63 (1st Dep't 2006), the Appellate Division held that

> [T]he courts, as a matter of public policy, give particular scrutiny to the reasonableness of the fee arrangements between attorneys and clients pursuant to their interest in, and statutory power, to regulate the practice of law, and it is the attorney that must shoulder the burden of demonstrating that a fee contract is fair, reasonable, and fully known and understood by the client. Indeed, even in the absence of fraud or undue influence, an agreement to pay a legal fee may be invalid if it appears that the attorney got the better of the bargain, unless he can show that the client was fully aware of the consequences and that there was no exploitation of the client's confidence in the attorney.

(quotations, citations, and alterations omitted.); *accord Jeffrey L. Rosenberg & Assocs., LLC v. Candid Litho Printing, Ltd.*, 76 A.D.3d 510, 510 (2d Dep't 2010) (denying summary judgment in fee dispute action and finding that attorneys failed to meet their burden to establish the reasonableness of their fees); *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 838 (2d Cir. 1993) ("[W]ith respect to a fee controversy between an attorney and client, courts as a matter of public policy give particular scrutiny to fee arrangements, casting the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and understood by their clients") (quotations and alterations omitted).

The Mo Firm also cannot establish that it performed $2 million worth of legal work during the pre-trial stage of the Criminal Action or to support the $1.1 million Ng paid the Mo Firm for the trial phase of the case. Contemporaneous time records from the other firms that did the substantive work (PJB, Shapiro Arato and Sills Cummis), as well as the email correspondence, Court filings, and transcripts show that the bulk of the legal work in the Criminal Action was performed by lawyers and law firms other than the Mo Firm.

The Mo Firm has not presented either contemporaneous time sheets, reconstructed time sheets, or any other documentary evidence to show the reasonable value of the services it performed on behalf of Ng, that it performed work for which it was not compensated, or that the fixed fee was reasonable. There is no factual basis on which this Court can conclude the Mo Firm's fees were reasonable and that it performed work for which it has not be compensated.

## II.  THE MO FIRM CANNOT RECOVER ON ITS ACCOUNT STATED CLAIM

That the Mo Firm has asserted a claim for account stated does not obviate the requirement that it demonstrate the reasonable value of the services purportedly rendered. The Mo Firm cannot prevail on its account stated claim because it did not inform Ng of its minimal role in representing him during the criminal action and because Ng regularly complained to the Mo Firm both about the costs of the litigation and about his dissatisfaction with the investigation and the motion and discovery strategy being pursued that Ng believed resulted in increased costs and unnecessary delay. See *4Kids Ent., Inc. v. Upper Deck C*o., 797 F. Supp. 2d 236, 249 (S.D.N.Y. 2011) ("[A] claim for an account stated cannot be made an instrument to create liability, nor may it be utilized simply as another means to attempt to collect under a disputed contract") (quotations omitted).

Accordingly, the Mo Firm cannot recover on its account stated claims. *See Preferred Health Care Ltd. v. Empire Blue Cross and Blue Shield*, 94 CIV. 9326 RPP, 1997 WL 160489, at *5 (S.D.N.Y. Apr. 7, 1997) ("fraud, mistake, or other equitable considerations" are defenses to an account stated claim); *Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*, 325 F. Supp. 2d 341, 360 (S.D.N.Y. 2004) ("Although the mere retention of an account for a reasonable amount of time without objection is said to prima facie establish assent to its correctness by the party receiving it, this may be overborne by proof of circumstances tending to a contrary inference" (quotation omitted; citing *Spellman v. Muehlfeld*, 166 N.Y. 245, 248 (1901)).

"Even in the absence of fraud or undue influence, an agreement to pay a legal fee may be invalid if it appears that the attorney got the better of the bargain, unless he can show that the client was fully aware of the consequences and that there was no exploitation of the client's confidence in the attorney." *Smitas v. Rickett*, 102 A.D.2d 928, 929 (3d Dep't 1984)

The Mo Firm also cannot recover because the fee charged by the Mo Firm was unconscionable given the work it performed. *Petition of Rosenman Colin Freund Lewis & Cohen*, 600 F. Supp. 527, 532 (S.D.N.Y. 1984).

### III.   THE MO FIRM BREACHED THE RETAINER AGREEMENTS

The evidence will show that the Mo Firm breached its obligations under the retainer agreements and did not perform most of the legal work it was retained to do and has not performed legal work valued at anywhere near $4.1 million. The fees charged by the Mo Firm were unreasonable and the evidence establishes that Ng paid the Mo Firm for work which it did not perform, and Mo must refund to Ng the legal fees it received in excess of the reasonable value of the services actually rendered. *See*, *Jacobson v. Sassower,* 113 Misc. 2d 279, *aff'd* 122 Misc.2d 863, *aff'd* 107 A.D.2d 603, *aff'd* 66 N.Y.2d 991 (1985).

### IV. MO AND THE MO FIRM FRAUDULENTLY INDUCED NG TO ENTER INTO THE RETAINER AGREEMENTS

The overwhelming evidence will establish that Mo and the Mo Firm intentionally misrepresented the Mo Firm's ability to represent Ng in the Criminal Action to induce Ng to retain the Mo Firm and pay an exorbitant legal fee. Mo falsely represented to him that the Mo Firm had the experience and expertise to represent him in a case of the magnitude of the Criminal Action. Indeed , the Mo Firm was not capable of performing the required work on the Criminal Action which is why it retained other firms to do the actual work. *See Seippel v. Jenkens & Gilchrist, P.C.*, 341 F Supp 2d 363, 383 (S.D.N.Y 2004], *amended on reconsideration,* 03 CIV. 6942 (SAS), 2004 WL 2403911 (S.D.N.Y. Oct. 26, 2004).

### CONCLUSION

For all of the above reasons, judgment should be entered in favor of Ng Lap Seng, together with such further relief as may be just and proper.

Dated:   New York, New York
             September 6, 2022

                                      COHEN TAUBER SPIEVACK & WAGNER

                                      By: /s/ Sari E. Kolatch
                                            Stephen Wagner
                                            Sari E. Kolatch
                                            420 Lexington Avenue
                                            Suite 2400
                                            New York, New York 10170
                                            Tel.: (212) 381-8729
                                            swagner@ctswlaw.com
                                            skolatch@ctswlaw.com
                                            *Attorneys for Ng Lap Seng*